**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-02580-NYW-MDB

NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY,

     Plaintiff,

v.

KERRI EMICK, and
STEVEN LOUDEN,

     Defendants.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on the Motion to Dismiss or, in the Alternative, Stay the Amended Complaint (the "Motion" or "Motion to Dismiss") filed by Defendant Kerri Emick ("Ms. Emick"). [Doc. 21]. The Motion is fully briefed. [Doc. 36; Doc. 41].[1] For the following reasons, the Motion to Dismiss is respectfully **DENIED**.

## BACKGROUND

Nationwide Property & Casualty Insurance Company ("Plaintiff" or "Nationwide") filed its Amended Complaint for Declaratory Judgment (the "Amended Complaint") on November 21, 2025. [Doc. 20]. Nationwide seeks a declaratory judgment that, inter alia, it does not have a duty to defend Ms. Emick in a pending state court case (the "Underlying

---

[1] Defendant Mr. Louden filed a "Response in Support" of Ms. Emick's Motion instead of filing his own affirmative motion to dismiss. [Doc. 31]. Under this District's Local Rules, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). To the extent Mr. Louden's Response seeks dismissal of Plaintiff's claims against him, the Court considers the Response procedurally improper, and this Order will not consider it.

Lawsuit"). *See* [*id.*]. Steven Louden ("Mr. Louden") initiated the Underlying Lawsuit following an altercation that occurred between him and Ms. Emick in the latter's home on March 26, 2023. *See* [*id.* at ¶¶ 20–27]. Mr. Louden filed his original complaint in March 2025, but later amended his complaint in October 2025. *See* [Doc. 20-2; Doc. 20-3 (the "Underlying State Complaint")]. Mr. Louden's Underlying State Complaint alleges that while he was at Ms. Emick's home, she "[t]hreatened [him] with a .357 magnum, pointing it at him multiple times . . . [t]hreatened [him] with a knife," and "[b]ashed [him] on the head with a magnifying glass." [Doc. 20 at ¶ 40 (citing Doc. 20-3 at ¶ 21)]. While Ms. Emick was pointing the gun at Mr. Louden, it fired "suddenly and without warning," injuring him in the chest. [*Id.* (citing Doc. 20-3 at ¶ 28)]. In the Underlying Lawsuit, Mr. Louden asserts three claims for relief against Ms. Emick: negligence; reckless infliction of emotional distress by extreme and outrageous conduct; and premises liability. [Doc. 20-3 at ¶¶ 49–67].

About a year after the incident, Ms. Emick pleaded guilty to Assault in the Second Degree, a Class 4 felony under Colorado law. *See* [Doc. 20 at ¶ 40; Doc. 20-4]. Mr. Louden's original state court complaint noted that "Ms. Emick was arrested, charged, and ultimately convicted" as a result of the incident. [Doc. 20-2 at ¶¶ 40–41]. But the Underlying State Complaint omits this information. *See* [Doc. 20-3].

Faced with the Underlying Lawsuit, "Ms. Emick made a claim with Nationwide under her property insurance policy," whereupon "Nationwide . . . agreed to defend Ms. Emick in the [Underlying] Lawsuit under a reservation of rights" and continues to do so. [Doc. 20 at ¶¶ 15–16]. Plaintiff seeks a declaratory judgment that:

    a. The allegations in the Lawsuit do no [sic] fall within the coverage grant.
    b. The Expected Or Intended Injury, Criminal Acts, Sexual Molestation,

> Corporal Punishment, Physical Or Mental Abuse, Or Harassment
> exclusions preclude coverage for the Incident;
>
> c. Based on the allegations in the Lawsuit, Nationwide does not have a
> duty to defend or indemnify Ms. Emick with regard to the Lawsuit;
> d. Nationwide is not obligated to pay damages recovered by Mr. Louden
> against Ms. Emick in the Lawsuit; and
> e. Any other such relief that the Court deems appropriate.

[*Id.* at 9].   On December 5, 2025, Ms. Emick filed this Motion to Dismiss, seeking a dismissal for failure to state a claim under Rule 12(b)(6) and a stay in the alternative.  *See* [Doc. 21].

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, courts must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). A claimant may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible.").  Courts must ultimately "determine whether the [pleading] sufficiently alleges facts supporting all the elements necessary to establish an entitlement

3

to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.    The Motion to Dismiss

####     A.    The Duty to Defend and the Complaint Rule

Ms. Emick asserts that Nationwide cannot state a claim upon which relief can be granted.  [Doc. 21].  In so arguing, she asserts that the "complaint rule" precludes this Court from considering her underlying criminal conviction in determining whether Plaintiff has adequately stated a claim.[2]  *See* [*id.* at 2].  Nationwide counters by asserting that an exception to the complaint rule applies, thus allowing this Court to consider Ms. Emick's conviction in determining whether it may proceed with this action.  *See* [Doc. 36 at 4].

Under Colorado law, "[a]n insurer's duty to defend [an insured in an underlying lawsuit] arises when the underlying complaint . . . alleges any facts that might fall within the coverage of the policy." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).  Insurers bear a heavy burden in proving there is no duty:  the duty applies "unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (quotation omitted).  One way for insurers to meet this burden is to demonstrate that a policy exclusion precludes coverage.  *See N.H. Ins. Co. v. TSG Ski &*

---

[2] While Ms. Emick frames the argument as "[e]ven with extrinsic evidence, Nationwide cannot prove that there is no possibility of coverage under the policy," [Doc. 21 at 2], Nationwide need not prove its case to survive a motion to dismiss, *see Glover v. Mabrey*, 384 F. App'x 763, 772 (10th Cir. 2010).  Rather, Nationwide's burden, and this Court's inquiry, turns on whether Nationwide has plausibly alleged a factual basis to prevail on its theory that the Criminal Acts Exclusion applies to Defendants.  *Id.* (citing *Iqbal,* 556 U.S. at 682).

*Golf, LLC*, 128 F.4th 1337, 1345 (citing *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004)).  In particular, the duty does not exist if the insurer can establish that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy."  *Id.* (quotation omitted).

###### B.      *Pompa* and the Complaint Rule Exception

Nationwide's argument against dismissal—that the complaint rule does not apply as normal and that this Court should consider Ms. Emick's criminal conviction—depends on an exception that the Tenth Circuit recognized in *Pompa v. American Family Mutual Insurance Co*.  *See Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139, 1148–49 (10th Cir. 2008) (finding an exception in order to consider a criminal conviction outside of the underlying complaint).  As an initial matter, the Tenth Circuit has held that "[w]here no controlling state decision [on a question of law] exists," federal courts "predict what the state's highest court would do."  *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).  When a panel of the Tenth Circuit has rendered a decision interpreting state law, that interpretation is binding on district courts within the Tenth Circuit until the state's highest court intervenes.  *Id.*

The Tenth Circuit was in such a position when it decided *Pompa*.  *See Pompa*, 520 F.3d at 1148.  The case involved a plaintiff who, after having pled guilty to negligent homicide and against whom judgment was entered in a wrongful-death action, brought breach of contract claims against his insurance provider.  *See id.* at 1141.  The district court found that the insurer demonstrated it had no duty to defend the insured.  *See id.* at 1142.  On appeal, the plaintiff argued that the district court erred in considering his criminal conviction since the underlying wrongful-death complaint did not reference it.

*See id.* at 1145. The Tenth Circuit affirmed the district court's judgment, holding that since plaintiff's conviction was "an indisputable fact that is not an element of either the cause of action or a defense" in the wrongful-death case, it could be considered despite its absence in the underlying complaint, and it predicted that the Colorado Supreme Court would recognize such an exception to the complaint rule. *Id.* at 1147–48 (noting that the Colorado Supreme Court had not yet had the opportunity to determine whether an exception to the complaint rule might result). In this action, Plaintiff emphasizes that the factual similarities demand a parallel outcome: it asserts that Ms. Emick's conviction is undisputed and is neither an element of any of the underlying causes of action nor a defense in the Underlying Lawsuit. *See* [Doc. 36 at 5].

While it is true that Tenth Circuit decisions subsequent to *Pompa* have hesitated to extend it further, this Court finds that the facts in the present case are sufficiently close to those in *Pompa* to warrant a similar outcome. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960–61 (10th Cir. 2011) (refusing to apply exception to allow consideration of extrinsic information where the "insurer had knowledge of such evidence when it denied coverage"); *Chavez v. Ariz. Auto. Ins. Co.*, 947 F.3d 642, 648 (10th Cir. 2020) (refusing to extend exception to allow information of which insurer had "actual knowledge"). And Ms. Emick cites no intervening authority from the Colorado Supreme Court (or any other Colorado state court) that directly addresses this issue.[3] *See generally* [Doc. 22; Doc. 41]. Therefore, under *Wankier*, the Tenth

---

[3] It does not appear that the *Pompa* exception to the complaint rule, also known as the "four corners" rule, has been expressly adopted or ratified by the Colorado Supreme Court or any lower Colorado court. *See United Fire*, 633 F.3d at 961; *TCD, Inc. v. Am. Fam. Mut. Ins. Co.*, 296 P.3d 255, 259 (Colo. App. 2012) (citing *United Fire*, 633 F.3d at 961).

Circuit's prediction in *Pompa* is binding on this Court.  *See Wankier*, 353 F.3d at 866.

Ms. Emick makes several arguments as to why this case is distinct from *Pompa*. She first argues that the *Pompa* exception applies only "in the context of a bad faith insurance claim against an insurer," so *Pompa* cannot apply since Ms. Emick has made no such complaint against Nationwide.  [Doc. 41 at 5 (citing *Am. Builders Ins. Co. v. Probuilders Specialty Ins. Co. RRG*, No. 16-cv-01832-WJM-CBS, 2017 WL 4856860, at *6 (D. Colo. June 30, 2017) ("A closer reading of *Pompa* reveals that" its exception applies only where the "insured's complaint contains allegations made in bad faith."))].  But *Pompa* does not indicate that the exception only applies in bad faith insurance claim cases; instead, it merely recognizes that the Colorado Supreme Court left open "the question whether allegations framed to trigger an insurance policy," i.e., allegations made in bad faith, "create a duty to defend."  *Pompa*, 520 F.3d at 1147–49 (making no ruling on the insured's action against the insurer).  So, while it is true that Ms. Emick has not filed a bad faith claim against Nationwide, unlike the plaintiff in *Pompa*, that distinction is ultimately one without difference.

Ms. Emick then argues that *Pompa* applies only when the "indisputable fact" does not implicate a claim or defense in an underlying action or when the underlying action has concluded.  *See* [Doc. 21 at 7–8].  She points to the fact that the Underlying Lawsuit is ongoing and argues that her guilty plea would implicate her defense in that case.  *See* [*id.*].  *Pompa* answers both arguments by its holding that, even if the insured's underlying litigation is ongoing, the fact that the conviction was undisputed and that it would only be used to assess coverage in the insurance action meant that his defense in the underlying action would not be prejudiced.  *Pompa*, 520 F.3d at 1148.  Since Ms. Emick's conviction

is undisputed and is only used here for determining coverage under her insurance policy, the *Pompa* exception applies, and the Court will consider Ms. Emick's conviction in its ruling on her Motion to Dismiss.[4]

Having decided that *Pompa* exception applies, the Court's analysis is straightforward. As mentioned previously, insurers may show there is no duty to defend by demonstrating that the allegations fall "solely and entirely" within an exclusion in the policy. *TSG Ski & Golf*, 128 F.4th at 1345. One exclusion is sufficient so long as it precludes coverage entirely. *See id.* at 1349 (applying one exclusion where it applied to all allegations). In interpreting an insurance contract, courts are to give its words "their plain meaning according to common usage." *Nat'l Union Fire Ins. Co. Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 30 (10th Cir. 2021) (quotation omitted). One of the exclusions that Nationwide relies on in arguing against coverage is the policy's "Criminal Acts" exclusion, which reads as follows:

> Coverages E and F [personal liability and medical payments] do not apply
> to the following:
>
> . . .

---

[4] As a technical matter, consideration of Ms. Emick's conviction does not occur under the auspices of judicial notice in the context of the Court's Rule 12(b)(6) analysis. *See* [Doc. 36 at 7]; *Pompa*, 520 F.3d at 1149 ("When considering a motion to dismiss a complaint for failure to state a claim, Colorado courts may consider matters of which they can take judicial notice even if not mentioned in the complaint.") (citing *Walker v. Van Laningham*, 148 P.3d 391, 397–98 (Colo. App. 2006)). The silence of subsequent Tenth Circuit decisions interpreting *Pompa* on judicial notice—in addition to the overarching hesitance to extend it—suggests that the judicial notice doctrine does not apply within the complaint rule context. *See United Fire*, 533 F.3d at 960–61; *Chavez*, 947 F.3d at 648. As another district court put it, using judicial notice here "would turn the complaint rule on its head." *Travelers Indem. Co. Am. v. Luna Gourmet Coffee & Tea Co.*, 533 F. Supp. 3d. 1013, 1021 (D. Colo. 2021). Rather, this Court considers Ms. Emick's conviction as simply an exception to the complaint rule.

2.  Criminal Acts

"Bodily injury" or "property damage" caused by or resulting from an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime[.]

[Doc. 20-1 at 35 (emphasis omitted); Doc. 20 at 9].

Applying this language to the Amended Complaint, the Court finds that Plaintiff states a claim upon which relief can be granted.   *See Iqbal*, 556 U.S. at 678. Consideration of Ms. Emick's felony assault conviction—as well as the allegations that she threatened Mr. Louden with a firearm, a knife, and physically beat him—indicate that it is plausible that the Criminal Acts Exclusion applies.  *See* [Doc. 20 at ¶ 40; Doc. 20-4]. Since Plaintiff has met its burden to survive the Motion via the Criminal Acts Exclusion, it is not necessary for the Court to consider now the plausibility of relief based on the other exclusions.  Accordingly, Ms. Emick's Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claim under Rule 12(b)(6), is respectfully **DENIED**.

## II.    The Motion to Stay in the Alternative

In alternative to dismissal, Ms. Emick seeks a stay of this action pending the conclusion of the Underlying Lawsuit.  [Doc. 21 at 12].  In support, Ms. Emick cites the Colorado Supreme Court's ruling that declaratory relief actions must concern issues that are "independent of and separable from [those in] the underlying action" to argue that the present action should be stayed pending resolution of the Underlying Lawsuit.  [*Id.* at 3 (citing *Const. Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562 (Colo. 1996))].  In response, Plaintiff argues that, since Ms. Emick's conviction is undisputed and separable from any self-defense claims she might have in the Underlying Lawsuit, the present action is independent from the underlying suit.  *See* [Doc. 36 at 12].  It also suggests that a stay

9

would prejudice both itself and the "Colorado community at large" by driving up insurance premiums.  [*Id.* at 13–14].

While motions to stay are generally analyzed under the *String Cheese* factors, other district courts have looked solely to *Constitution Associates* when assessing motions to stay in a declaratory relief context, and this Court follows that approach.  *See, e.g.*, *Auto-Owners Ins. Co. v. High Country Coatings, Inc.*, 261 F. Supp. 3d. 1129, 1139–40 (D. Colo. 2017); *Addison Ins. Co. v. Rippy*, No. 08-cv-00237-PAB-MJW, 2009 WL 723322, at *6 (D. Colo. Mar. 18, 2009); *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d. 1170, 1195 (D. Colo. 2018).  The Colorado Supreme Court illustrated the independent and separable standard in *Hartford Insurance Group v. District Court*, which featured a coverage dispute following a collision between two truck drivers.  *See Hartford Ins. Grp. v. Dist. Ct. 4th Jud. Dist.*, 625 P.2d 1013, 1015 (Colo. 1981).  The insurer of one of the drivers sought a declaratory judgment that the other driver's actions fell outside his scope of employment and were intentional, not negligent.  *Id.*  But since the insured driver had pending claims of negligence against that driver, the court found that the declaratory judgment action could not proceed since the driver would effectively be forced to argue he was negligent, thus permitting the other driver to invoke collateral estoppel in the underlying lawsuit.  *Id.* at 1016.

Plaintiff's declaratory judgment action requests that this Court declare that coverage is precluded based on the Criminal Acts Exclusion, the "Expected Or Intended Injury" ("Intended Injury Exclusion"), and/or the "Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse, Or Harassment" ("Abuse Exclusion").  [Doc. 20 at 9].  The Court considers each in turn.

***Criminal Acts Exclusion.***  As discussed above, the Criminal Acts provision excludes coverage for:

> 2.  Criminal Acts
>
> "Bodily injury" or "property damage" caused by or resulting from an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime.

[Doc. 20-1 at 35 (emphasis omitted)].  Ms. Emick argues that this action is intertwined with the Criminal Acts Exclusion because Nationwide seeks declaratory rulings that Ms. Emick's actions were "criminal in nature and not justified by self-defense."  *See* [Doc. 21 at 14].

A plain reading of the Criminal Acts Exclusion reflects that a conviction is not necessary to trigger its application.  *See* [Doc. 20-1 at 35].  Indeed, the Exclusion unequivocally states that the "exclusion applies regardless of whether the 'insured' is actually charged with . . . a crime."  [*Id.*].  Ms. Emick does not meaningfully engage with how the term "criminal in nature" should be interpreted, nor does she explain how a factfinder, determining whether she is liable for negligence, reckless infliction of emotional distress by extreme and outrageous conduct, or premises liability implicates "self-defense" or how she would be required to take a legal position contrary to ones she would be required to take here.  *See* [Doc. 21 at 14; Doc. 41 at 10].  This Court respectfully concludes that a stay is not warranted based on the Criminal Acts Exclusion.

***Intended Injury Exclusion.***  Ms. Emick fares no better with respect to the Intended Injury Exclusion.  That policy provision excludes coverage for:

> "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

11

    a.  Is of a different kind, quality or degree than initially expected or intended; or

    b.  Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property[.]

[Doc. 20-1 at 35 (emphasis omitted)].  Contrary to her unexplained suggestion otherwise, *see* [Doc. 21 at 14], Ms. Emick is free to argue in this action *and* the Underlying Lawsuit that she used "reasonable force" to trigger the exclusion's exception.  [Doc. 20-1 at 35]. Accordingly, unlike in *Hartford*, Ms. Emick is not required to make an argument that would create the risk of collateral estoppel in the Underlying Lawsuit.  *Cf. Hartford*, 625 P.2d at 1015.  As a result, this Court finds that a stay is not warranted pursuant to the Intended Injury Exclusion.

    ***Abuse Exclusion.***  The Court reaches the same conclusion regarding the issue of the applicability of the Abuse Exclusion.  That policy provision excludes coverage for:

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment, physical or mental abuse, or harassment, including sexual harassment, whether actual, alleged or threatened[.]

[Doc. 20-1 at 36].  Ms. Emick contends that whether or not she "abused" Mr. Louden is intertwined with the Underlying Lawsuit.  [Doc. 21 at 14].  But again, Ms. Emick's positions in both this action and the Underlying Lawsuit, i.e., that she did not physically or mentally abuse Mr. Louden, are entirely consistent.  She is not required to make any statements that would permit Mr. Louden to invoke collateral estoppel in the Underlying Lawsuit in arguing that her conduct does not constitute "physical or mental abuse."  Therefore, the Motion to Dismiss, to the extent it seeks a stay of this case, is respectfully **DENIED**.

12

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Motion to Dismiss or, in the Alternative, Stay the Amended Complaint [Doc. 21] is **DENIED**;

(2)    The stay of this case, *see* [Doc. 35], is hereby **LIFTED**; and

(3)    The Parties are **DIRECTED** to contact the Chambers of the Honorable Maritza Dominguez Braswell no later than **July 23, 2026** to set a Scheduling Conference in this case.

DATED:  July 16, 2026                     BY THE COURT:

_____
Nina Y. Wang
United States District Judge

13